J. CLIFF LASSITER AND WIFE EVA C. LASSITER, PLAINTIFFS v. BANK OF NORTH CAROLINA, DEFENDANT

No. COA00-1065

(Filed 18 September 2001)

**Construction Claims— construction loan—residential dwelling house—no duty of lender to inspect—parol evidence rule**

The trial court did not err in an action arising out of a contract for a construction loan for a residential dwelling house by granting summary judgment in favor of defendant bank even though plaintiffs contend the purpose statement contained in the

LASSITER v. BANK OF N.C.

[146 N.C. App. 264 (2001)]

loan agreement gives rise to an affirmative duty on behalf of defendant to make property inspections before paying plaintiffs' contractor, because: (1) purpose statements in loan agreements are permissive and do not create an affirmative duty on behalf of the lender; (2) even when a loan agreement indicates the lender will only disburse loan proceeds in proportion to the amount of construction completed, it does not require the lender to inspect the construction progress for the borrowers' benefit; (3) the purpose statement in this loan agreement was permissively inserted to clarify that defendant may make property inspections of the loan collateral for its own benefit; and (4) alleged statements by defendant's agent that he would personally look after plaintiffs, that he knew about building, and that he would make sure their contractor had done it right are effectively barred from evidence by the parol evidence rule or are not sufficiently definite and certain so as to give rise to an enforceable contract.

Appeal by plaintiffs from judgment entered 3 July 2000 by Judge Sanford L. Steelman, Jr. in Davidson County Superior Court. Heard in the Court of Appeals 6 June 2001.

*Smith, James, Rowlett & Cohen, by Norman B. Smith for plaintiff-appellants.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Reid L. Phillips and Jennifer T. Harrod for defendant-appellee.*

THOMAS, Judge.

Plaintiffs, J. Cliff Lassiter and wife, Eva C. Lassiter, appeal from a grant of summary judgment in favor of defendant, Bank of North Carolina. They complain that defendant violated an agreement to make construction inspections prior to any disbursement of funds.

For the reasons discussed herein, we affirm the trial court.

The facts are as follows: Plaintiffs entered into discussions with defendant concerning a construction loan for a residential dwelling house. Plaintiffs allege defendant's agent, Rick Callicutt (Callicutt), assured them he would "personally look after" them, that he "knew about building," and that he would make sure their contractor "has done it right."

The parties entered into a contract, with defendant to provide $150,000.00 financing. Under the terms of the contract, plaintiffs were

to initially pay defendant $26,000.00, which would be disbursed to plaintiffs' contractor. Defendant was to then begin drawing down payments from the $150,000.00 loan proceeds as the work progressed. These payments were to be made only upon express draw requests by plaintiffs. The loan agreement also contained a purpose clause which stated defendant was to make no more than one draw per month from the loan proceeds, and such draws were to be made only on the basis of plaintiffs' draw requests and property inspections by defendant's inspector, "to insure that the loan is not drawn down below the point of construction completion."

Defendant eventually disbursed plaintiffs' initial deposit of $26,000.00, plus $105,524.34 of the $150,000.00 loan proceeds in a total of eight payments. Plaintiffs contend defendant disbursed these funds directly to the contractor, while defendant contends it made the loan disbursements to plaintiffs, who controlled the money and directed it to their contractor. Defendant presented an affidavit to the trial court at the summary judgment hearing, which stated plaintiffs ordinarily deposited their construction loan advances into their interest-bearing savings account. They would then purchase cashier's checks and draw from the savings account to pay the contractor.

Throughout the period the payments were made, defendant never inspected the construction project. Some time after the eighth draw, plaintiffs became aware that the loan proceeds had been drawn down below the point of construction completion. They contend this was a direct result of defendant's failure to make property inspections.

Plaintiffs also claim defendant altered the construction inspection and disbursement schedules to show the construction 61% completed, when the form in its unaltered state showed construction only 36% completed. At no point, plaintiffs argue, was the construction on their dwelling house more than one-third completed, with the construction itself containing numerous defects which would have been noticed upon reasonable inspection.

On 2 June 1999, plaintiffs filed a complaint against defendant alleging breach of contract, negligence, and unfair and deceptive trade practices. They claim they were injured by the amounts defendant disbursed to their contractor, the amounts necessary to remedy the construction defects, and the amount now required to complete the project.

**LASSITER v. BANK OF N.C.**

[146 N.C. App. 264 (2001)]

By their only assignment of error, plaintiffs argue the trial court committed reversible error by granting defendant's motion for summary judgment. We disagree.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2000).

We first note defendant filed a Rule 12(b)(6) motion to dismiss, but because the court considered the affidavit, which was outside of the pleadings, the motion was converted to a summary judgment motion. In considering a summary judgment motion, the trial court must view all evidence in the light most favorable to the non-movant, accepting its alleged facts as true. *Anderson v. Demolition Dynamics, Inc.*, 136 N.C. App. 603, 525 S.E.2d 471, *disc. rev. denied*, 352 N.C. 356, 544 S.E.2d 546 (2000). However, Rule 56(e) provides

> When a motion for summary judgment is made and supported [by an affidavit], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

N.C. Gen. Stat. § 1A-1, Rule 56(e) (2000). Thus, once the moving party demonstrates the claimant cannot show essential evidence to support an element of his claim, the burden shifts to the non-movant to establish a genuine issue of material fact. *Fisher v. Carolina Southern Railroad*, 141 N.C. App. 73, 539 S.E.2d 337 (2000). In the instant case, plaintiffs filed no response to defendant's affidavit. Because plaintiffs cannot merely rely upon what was stated in their initial pleadings, we accept defendant's description of the disbursements.

Proceeding with our review accordingly, we affirm on the bases of the terms of the contract, the parol evidence rule and the vagueness of the conversations giving rise to the alleged duty.

Plaintiffs contend that the purpose statement contained in the loan agreement, which said in part that property inspections were to be made "to insure that the loan is not drawn down below the point of construction completion," gives rise to an affirmative duty on

behalf of defendant to make property inspections before paying plaintiffs' contractor.

"A lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party." *Camp v. Leonard*, 133 N.C. App. 554, 560, 515 S.E.2d 909, 913 (1999). The loan agreement between plaintiffs and defendant contained no language obligating defendant to make property inspections before making or allowing a draw. Defendant was to make disbursements based on plaintiffs' requests, but these payments were not contingent upon a property inspection. Purpose statements in loan agreements are permissive and do not create an affirmative duty on behalf of the lender. *Cartwood Const. Co. v. Wachovia Bank & Trust Co.*, 84 N.C. App. 245, 352 S.E.2d 241, *aff'd*, 320 N.C. 164, 357 S.E.2d 373 (1987). Even when a loan agreement indicates the lender will only disburse loan proceeds in proportion to the amount of construction completed, it does not require the lender to inspect the construction progress for the borrowers' benefit. *Camp*, 133 N.C. App. at 561, 515 S.E.2d at 914.

Here, the purpose statement was permissively inserted into the loan agreement to clarify that defendant *may* make property inspections of the loan collateral, for its own benefit. Under *Cartwood* and *Camp*, defendant incurred no duty to inspect the construction progress by agreeing to the terms of the contract.

This Court stated in *Camp* that liability " 'will be imposed on construction lenders *only* where contractual provisions or lender assurances justify purchaser reliance on inspections *for purchaser's benefit*.' " *Camp*, 133 N.C. App. at 559, 515 S.E.2d at 913 (quoting Jeffrey T. Walter, Financing Agency's Liability to Purchaser of New Home or Structure for Consequences of Construction Defects, 20 A.L.R. 5th 499, 508 (1994)) (emphasis added). In the instant case, the plain language of the purpose clause demonstrates the inspections were to be made, if at all, for the benefit of the *lender*. Under *Camp*, plaintiffs cannot justifiably rely on the purpose clause to argue that defendant should make property inspections for *their* benefit.

Plaintiffs instead rely on *Rudolph v. First Southern Federal Sav. & Loan Ass'n.*, 414 So.2d 64 (Ala. 1982), an Alabama case which held that even though a lender's inspection ordinarily is for the lender's benefit, additional assurances made by the lender gives rise to an enforceable duty on the borrower's part with respect to inspections. Plaintiffs, however, cite no comparable North Carolina authority and we decline to vary from the holding of *Camp*.

We next address plaintiffs' contention that the statements made by Callicutt give rise to an affirmative duty. The alleged statements that he would personally look after plaintiffs, that he "knew about building," and that he would make sure their contractor "has done it right" are effectively barred from evidence by the parol evidence rule:

> The parol evidence rule prohibits the admission of parol evidence to vary, add to, or contradict a written instrument intended to be the final integration of the transaction. In the event that a particular writing is only a partial integration of the agreement, "it is presumed the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing.

*Hall v. Hotel L'Europe, Inc.*, 69 N.C. App. 664, 666, 318 S.E.2d 99, 101 (1984) (citations omitted) (quoting *Neal v. Marrone*, 239 N.C. 73, 77, 79 S.E.2d 239, 242 (1953)). Plaintiffs do not contend the loan agreement was not meant to be the final integration of the transaction between defendant and themselves. Therefore, parol evidence may not be considered.

Even if Callicutt's statements were not effectively barred by the parol evidence rule, however, they are too vague to give rise to an affirmative duty on behalf of defendant.

"As a general matter, a contract must be sufficiently definite in order that a court may enforce it." *Brooks v. Hackney*, 329 N.C. 166, 170, 404 S.E.2d 854, 857 (1991). "Furthermore, to be binding, the terms of a contract must be definite and certain or capable of being made so; the minds of the parties must meet upon a definite proposition." *Elliott v. Duke University, Inc.*, 66 N.C. App. 590, 596, 311 S.E.2d 632, 636, *disc. rev. denied*, 311 N.C. 754, 321 S.E.2d 132 (1984).

First, when Callicutt stated he would personally look after plaintiffs he did not say that he would take any specific action in doing so. His promise to "look after" plaintiffs is too vague to be enforceable as a matter of law. Second, Callicutt's statement that he "knew about building" is not a promise to do anything and therefore can not give rise to a duty on his behalf. Third, when Callicutt said he would make sure the contractor "has done it right," he did not explain that he would take any specific action. Therefore, taken both individually and as a whole, the statements are not sufficiently definite and certain so as to give rise to an enforceable contract. *See also Marvel*

*Lamp Co. v. Capel,* 45 N.C. App. 105, 262 S.E.2d 368, *disc. review denied,* 300 N.C. 197, 269 S.E.2d 617 (1980) (affirming summary judgment where language of defendant's letter was too vague to be enforced as a promise); *Miller v. Rose,* 138 N.C. App. 582, 532 S.E.2d 228 (2000) (affirming summary judgment for defendant where parties never had a concrete understanding concerning the financing of a partnership agreement).

Plaintiffs also made claims of negligence and unfair and deceptive trade practices. However, arguments and assignments of error are deemed abandoned unless legal authority is cited in the text. N.C.R. App. P. 28(b)(5); *Joyner v. Adams,* 97 N.C. App. 65, 387 S.E.2d 235 (1990). In the instant case, plaintiffs failed to cite any authority in their brief concerning that part of the assignment of error related to their claims based on negligence and unfair and deceptive trade practices. Therefore, those issues are not considered by this Court.

Defendant, meanwhile, included as an affirmative defense and argued in its brief that plaintiffs had agreed to release all claims against defendant. Because we otherwise hold in defendant's favor, we do not reach that argument.

For the reasons discussed herein, we affirm the trial court's order granting summary judgment in favor of defendant.

AFFIRMED.

Judges WALKER and McCULLOUGH concur.