Wells Fargo Bank, Nat'l Ass'n v. VanDorn, 2012 NCBC 6.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 6940

WELLS FARGO BANK, NATIONAL
ASSOCIATION,

        Plaintiff,

        v.

MARK W. VANDORN, ALAN COOK,
BRIAN COOK and BRIMARK, LLC,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON PLAINTIFF'S MOTION
TO DISMISS COUNTERCLAIMS**

{1} THIS MATTER is before the Court on Plaintiff's Motion to Dismiss Counterclaims ("Motion") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). For the reasons stated below, the Motion is GRANTED.

> *Womble Carlyle Sandridge & Rice, LLP, by W. Clark Goodman and Amanda W. Anders, for Plaintiff and Counter-defendant Wells Fargo Bank, National Association.*

> *Issacson Issacson Sheridan & Fountain, LLP, by Jennifer N. Fountain for Defendants and Counter-claimants Mark W. VanDorn, Alan Cook, Brian Cook, and Brimark, LLC.*

Gale, Judge.

## INTRODUCTION

{2} Plaintiff Wells Fargo Bank, National Association ("Wells Fargo"), successor by merger to Wachovia Bank, National Association ("Wachovia"), initiated this action in Guilford County on May 31, 2011 by filing a Verified Complaint seeking to enforce a note executed by Defendants Brimark, LLC ("Brimark") and Alan Cook ("A. Cook"), and co-signed or guaranteed by Defendants Brian Cook ("B. Cook") and Mark W. VanDorn ("VanDorn"), the proceeds from which were used to

finance the purchase of a lot in a resort development in Watauga County, North Carolina.

{3} Each Defendant separately filed a timely answer asserting counterclaims for breach of fiduciary duty and negligence. The essential allegations are the same in each.

{4} On September 6, 2011, Plaintiff sought to designate the case as a complex business case based on the allegations of the counterclaims. The matter was so designated by Chief Justice Sarah Parker on September 7, 2011 and assigned to the undersigned on September 14, 2011.

{5} Plaintiff filed its Motion on October 7, 2011. The Motion was fully briefed, the Court heard oral argument, and the matter is ripe for disposition.

{6} The central allegation of the Counterclaims is that a fiduciary relationship arose from the long standing relationship between Plaintiff's Wealth Management Officer, Judd Franklin ("Franklin"), and Defendant B. Cook, imposing duties beyond the normal lender-borrower relationship, including the duty to advise Defendants against the risks inherent in the real estate investment and the duty to determine the ability of the Defendants to repay the loan in the event proceeds from a later resale of the lots did not generate adequate proceeds.

{7} The Court GRANTS the Motion because it finds that the allegations of the Counterclaims, accepted as true with reasonable inferences drawn therefrom, do not create the duties upon which Defendants rely.

STATEMENT OF FACTS

{8} For purposes of the Motion, the Court has accepted the allegations of the Counterclaims as true, and has drawn reasonable inferences from those facts. *See, e.g., Sutton v. Duke*, 277 N.C. 94, 102–03, 176 S.E.2d 161, 166 (1970); *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008); *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670–71, 355 S.E.2d 838, 840–41 (1987).

{9} The Counterclaims are premised on the assertion that a fiduciary duty arose and was breached because: (1) B. Cook had a long-standing relationship with

Plaintiff, used Plaintiff's Wealth Management Division for most of his banking, investment, and insurance needs, and relied upon Plaintiff for advice and counseling regarding a broad spectrum of financial matters (B. Cook Countercl. ¶¶ 5–6); (2) Defendants relied on Plaintiff and Franklin to assist and direct them through the loan process, deal with them honestly, utilize a thorough and complete underwriting process, and to ensure that the appraisal was accurate (B. Cook Countercl. ¶ 34); (3) Plaintiff acted above and beyond the normal lender-borrower relationship because B. Cook had a special confidence due to his prior relationship with Franklin (B. Cook Countercl. ¶ 43); (4) Defendants placed great trust and confidence in Plaintiff in underwriting the loan to act in their best interests (B. Cook Countercl. ¶¶ 44–45); (5) Defendants placed great confidence in Plaintiff to obtain accurate appraisals of the lot (B. Cook Countercl. ¶ 46); (6) "[t]he confidence and influence placed in Plaintiff by Defendants resulted in the influence and domination of Defendants by Plaintiff." (B. Cook Countercl. ¶ 47); and (7) Plaintiffs would not have purchased the lot and suffered loss had Plaintiff appropriately protected the Defendants.

{10} On or before December 2006, Defendants, or some of them, decided to purchase the real property known as Lot 25, Section 2, Laurelmor, a gated resort in Watauga County, North Carolina, which was marketed as an exclusive community to include amenities such as a golf-course designed by a well-known professional, pools, and lavish homes. Plaintiff played no role in selecting the lot or Defendants' determination to purchase it. Rather, Plaintiff first became involved when B. Cook approached Franklin to secure financing. (B. Cook Countercl. ¶¶ 8–13.)

{11} Plaintiff was a preferred lender for the Laurelmor development, and was familiar with the representations being made by the developer in connection with the sale of lots. (B. Cook Countercl. ¶ 8–14.)

{12} Defendants complain that Franklin made no inquiry regarding Defendants' ability to repay the loan or the lot chosen for purchase. (B. Cook Countercl. ¶ 27.)[1]

{13} Plaintiff secured an appraisal of the lot. Defendants allege Plaintiff knew or should have known and should have advised Defendants that the appraisal was improperly done and assigned an inflated value because it: (1) was for the exact purchase price; (2) used only comparables from sales within the same development; (3) did not take into account that some lots were larger than others but rather valued each lot at the same price; and (4) based its valuation on amenities that were not yet in place. (B. Cook Countercl. ¶¶ 16–24.)

{14} Defendants do not allege that they ever saw or commented on the appraisal.

{15} Plaintiff was represented by counsel but did not advise Defendants to seek independent counsel. As a result, Defendants contend they signed the loan documents and guarantees without the benefit of counsel or a clear understanding of the documents' legal effect. (B. Cook Countercl. ¶¶ 29–31.)

## III. STANDARD OF REVIEW

{16} The appropriate inquiry for a motion to dismiss pursuant to Rule 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse*, 189 N.C. App. at 237, 658 S.E.2d at 36; *see Sutton*, 277 N.C. at 102–03, 176 S.E.2d at 166; *see also Harris*, 85 N.C. App. at 670–71, 355 S.E.2d at 840–41.

---

[1] Of course, Defendants clearly imply Plaintiff was well acquainted with B. Cook's financial status by reason of his participation in Plaintiff's Wealth Management Division.

## IV.  ANALYSIS

### A.  Defendants Fail to Establish a Fiduciary Relationship

{17}  A breach of fiduciary duty depends in the first instance on the existence of a fiduciary relationship between the parties.  *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citation omitted).  "[I]n an ordinary lender-borrower relationship, the lender does not owe any duty to its borrower beyond the terms of the loan agreement[,]" *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992) ("[P]arties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract"), and "[a] lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party."  *Lassiter v. Bank of North Carolina*, 146 N.C. App. 264, 268, 551 S.E.2d 920, 922 (2001).  Defendants contend, however, that the lending relationship here was transformed by virtue of B. Cook's status as a customer of Plaintiff's Wealth Management Division and the alleged domination and influence exerted by Plaintiff in connection with the financing of the Lauralmor lot.

{18}  Some legal relations give rise to fiduciary relationships as a matter of law.  *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931).  The lending relationship here is not such a relationship.  A fiduciary relationship with accompanying duties may also exist when:

> there has been special confidence reposed in one side who in equity and good conscious is bound to act in good faith and with due regard to the interest of the one reposing confidence . . ., [and] 'it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.'

*Dalton*, 353 N.C. at 650–51, 548 S.E.2d at 707–08.  These determinations depend on particularized inquiries and "only when one party figuratively holds all the cards— all the financial power or technical information, for example—have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347–48 (4th Cir.

1998); *see Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 2002 NCBC 5 (N.C. Super. Ct. Jul. 10, 2002), http://www.ncbusinesscourt.net/opinions/2002% 20NCBC% 204%20%28Sunbelt%29.pdf

{19} Defendants' conclusory allegations do not allege facts adequate to establish the domination and influence over the lot transaction required to establish a fiduciary relationship. Defendants do not allege Plaintiff or its employees located, identified, or recommended the lot, or that the lot purchase was part of a broader financial plan that Plaintiff had developed for B. Cook or the Defendants. Defendants do not allege that B. Cook or any other Defendant sought investment advice regarding the lot transaction. To the contrary, Defendants' allegations indicate that Plaintiff became involved in the lot transaction only after Defendants had located the lot, formed the intent to purchase the lot, formed Brimark to facilitate the purchase, and approached Plaintiff about financing the transaction.

{20} While Defendants state the conclusion that they relied on Plaintiff in connection with the lot transaction, in actuality, Defendants' allegations do no more than describe the typical lender-borrower relationship from which no fiduciary relationship arises.

{21} There is no basis to impose on the lender the duty to assess the investment risk Defendants elected to undertake in purchasing the resort lot.

{22} The Motion is GRANTED. Defendants' Counterclaim for breach of fiduciary duty is DISMISSED.

B. There Is No Separate Duty Upon Which the Negligence Claim Can Be Brought

{23} In the absence of a fiduciary relationship, "[a] lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party." *Lassiter*, 146 N.C. App. at 268, 551 S.E.2d at 922.

{24} Neither the loan documents nor North Carolina law impose a duty of care beyond the traditional lender-borrower relationship.

{25} Defendants have not alleged any particularized facts that would justify imposing liability on the lender for an improper appraisal. They do not allege that

they ordered the appraisal, spoke to Plaintiff's selected appraiser, saw the appraisal, or participated in the appraisal process in any way. Generally, a lender's "inspection of the premises to be mortgaged is made only to determine whether the property has sufficient value to secure the loan, and is for the benefit of the lender only." *Camp v. Leonard*, 133 N.C. App. 554, 559, 515 S.E2d 909, 913 (1999); *see Allran v. Branch Banking & Trust, Corp.*, 2011 NCBC 21 ¶ 42 (N.C. Super. Ct. Jul. 6, 2011), http://www.ncbusiness court.net/opinions/2011_NCBC_21.pdf; *see also Bednell v. Coastal Communities*, No. 09-CVS-3376 (N.C. Super. Ct. June 3, 2011) (indicating that a lender does not owe borrowers a duty to disclose the process by which appraisals are obtained or an assessment of the appraisal's accuracy).

{26} Defendants have likewise failed to demonstrate any duty owed by a lender to assure the borrower's understanding of the full legal effect of loan and guarantee documents which the borrower had a full opportunity to review before executing. Defendants do not allege that Plaintiffs prevented them from reading the documents, affirmatively misrepresented terms of the documents, or refused to answer questions about the documents. Rather, as Defendants' Answers indicate, the loan documents, attached as Exhibit A to the Verified Complaint "speak for themselves" and provide: "CAUTION: IT IS IMPORTANT THAT THE BORROWER THOROUGHLY READS THIS NOTE BEFORE THE BORROWER SIGNS IT[;]" and the notice attached to the guarantee and signed by B. Cook and VanDorn provides: "You are being asked to guarantee this debt . . . Think carefully before you do. If the borrower does not pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility." (Answers ¶¶ 9, 11; Verified Compl. Ex. A.)

{27} In sum, this is yet another case where investors in resort development property have suffered substantial losses following the economic downturn. There is, however, no demonstrable basis here for shifting that loss to the lender.

## V.  CONCLUSION

{28}  For the reasons stated, Plaintiff's Motion is GRANTED.  Defendants' Counterclaims for breach of fiduciary duty and negligence are DISMISSED.

IT IS SO ORDERED, this 17th day of January, 2012.