Synovus Bank v. Parks, 2013 NCBC 40.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

IN THE GENERAL COURT OF
JUSTICE
SUPERIOR COURT DIVISION
10 CVS 5819

SYNOVUS BANK,

      Plaintiff,

v.

TERRY R. PARKS and HELAINE V.
PARKS,

      Defendants, Counterclaimants
      and Third-Party Plaintiffs,

v.

SYNOVUS FINANCIAL CORP. d/b/a
NATIONAL BANK OF SOUTH
CAROLINA, KEITH VINSON,
individually, KEITH VINSON d/b/a
SEVEN FALLS, LLC et al.,

      Third-Party Defendants and
      Counterclaim Defendants.

ORDER AND OPINION

*Van Winkle, Buck, Wall, Starnes, and Davis, P.A. by W. Carleton Metcalf
and Melissa L. English for Plaintiff and Third-Party Defendant Synovus
Financial Corp. d/b/a National Bank of South Carolina.*

*The Ward Law Firm, P.A. by John E. Rogers, II for Defendants,
Counterclaimants, and Third-Party Plaintiffs.*

*James, McElroy and Diehl, P.A. by Richard B. Fennell for non-bank Third-
Party Defendants Keith Vinson, Seven Falls, LLC, et al.*

Murphy, Judge.

{1}   THIS MATTER is before the Court on Plaintiff's Motion to Dismiss
Amended Counterclaims ("Motion I") and Third-Party Defendant Synovus Financial
Corp. d/b/a National Bank of South Carolina's ("Third-Party Defendant") Motion to
Dismiss Amended Third-Party Claims ("Motion II") (collectively the "Motions").
After considering the Motions, the briefs in support and opposition, and the
arguments made by counsel at the Court's May 4, 2012, hearing on the Motions, the

Court GRANTS in part, and DENIES in part, Plaintiff and Third-Party Defendant's Motions.

## I.

## PROCEDURAL HISTORY

{2} Plaintiff filed its Complaint on November 8, 2010, in Buncombe County, North Carolina. (Compl. 3.) On April 12, 2011, Defendants filed their Answer, Counterclaims, and Third-Party Complaint. (Defs.' Answer 32.)

{3} Because Defendants were also members of a class action in Georgia involving the same Plaintiff and claims herein, Defendants moved to dismiss this action, or in the alternative, have this action stayed pending resolution of the Georgia case. In response, Plaintiff moved for an anti-suit injunction to bar Defendants from litigating its claims against Plaintiff in this action in any other jurisdiction within or without North Carolina. On June 19, 2011, the Honorable Mark E. Powell denied Defendants' Motion to Dismiss, and granted Plaintiff's Motion for Anti-Suit Injunction.

{4} Plaintiff moved for this case to be designated as a complex business case pursuant to Rule 2.1 of the General Rules of Practice and Procedure for the Superior and District Courts on August 4, 2011. *Synovus Bank v. Parks*, 10 CVS 5819 (N.C. Super. Ct. Aug. 4, 2011) (motion for complex business case designation). The case was subsequently designated as an exceptional case by the Chief Justice of the North Carolina Supreme Court and assigned to the undersigned for adjudication of all matters. *Synovus Bank v. Parks*, 10 CVS 5819 (N.C. Super. Ct. Sept. 7, 2011) (order assigning case to this Court).

{5} On November 1, 2011, Defendants renewed their motion for leave to file an amended Answer and Counterclaims that was originally filed on August 9, 2011. Plaintiff consented to the August 9 Motion to Amend. The Motions presently before the Court were filed on January 26, 2012. (Pl.'s Mot. Dismiss 1; Third-Party Def.'s Mot. Dismiss 2.) The Court heard oral arguments on the Motions on May 4, 2012, and the Motions are ripe for adjudication.

## II.

## STATEMENT OF FACTS

{6} The Court does not make findings of fact in connection with motions to dismiss pursuant to Rule 12(b)(6), as such motions "do[] not present the merits, but only whether the merits may be reached." *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). Accordingly, for the purposes of analyzing Plaintiff and Third-Party Defendant's motions to dismiss pursuant to Rule 12(b)(6), the Court recites only those facts included in the pleadings that are relevant to the Court's legal determinations.

{7} Seven Falls Golf and River Club ("Seven Falls") was planned to be a 1,600 acre private golf community in Hendersonville, North Carolina. (Defs.' Am. Countercls. and Third-Party Compl. ("Am. Counterclms.") 7.) However, the community was never completed. (Am. Countercls. 7.) On April 22, 2008, Defendants entered into a Purchase and Sale Agreement (the "Agreement") with Seven Falls, LLC (the "Developer") to purchase lot 50 in Seven Falls. (Pl.'s Mot. Dismiss Ex. A.) Per the terms of the Agreement, the Developer was "obligated to complete the following: (a) paved roads . . . ; and (b) installation of utility services to the Property . . . ." (Pl.'s Br. Supp. Mot. Dismiss Ex. A ¶ 13.) In addition, the Developer was also obligated to complete: the eighteen-hole golf course, golf house, golf-practice facility, and other non-golf sport facilities including tennis courts, fitness center, and swim club. (Pl.'s Br. Supp. Mot. Dismiss Ex. A ¶ 13.)

{8} Defendants acknowledged as part of the Agreement that the Developer "shall be the sole party responsible for the performance of the [Developer's] obligations under th[e] Agreement and acknowledges that no other person, firm, or entity, including, without limitation, any entity affiliated with [Developer], shall have any obligation or liability under th[e] Agreement." (Pl.'s Br. Supp. Mot. Dismiss Ex. A ¶ 17.) Defendants also agreed to "waive[] all claims against all companies and persons affiliated with [Developer] for any loss, cost or damages arising out of [Developer's] performance or non-performance of its obligations to

[Defendants] in connection with this Agreement or any other instrument relating to Seven Falls." (Pl.'s Br. Supp. Mot. Dismiss Ex. A ¶ 17.)

{9} As was the case with many real estate developments marketed at the height of the real estate boom, the global financial crisis of 2008 negatively impacted Plaintiff's ability to complete the Seven Falls project, and investors who thought they were buying into a luxury residential community were left holding worthless property while owing significant financial obligations on their purchases. Defendants' claims against Plaintiff and Third-Party Defendant stem from a theory that Plaintiff, Third-Party Defendant, and the Developer fraudulently induced the purchase of lots at Seven Falls through the use of an aggressive marketing scheme. (Am. Countercls. ¶¶ 2(a), 2(i), 2(l), 2(q), 8, 12–16, 20–21, 23.) Defendants further argue that the relationship between Plaintiff, Third-Party Defendant, and the Developer constituted a joint venture or partnership, and thus, any liability attributable to one of the parties should be imposed on all of the parties. Specifically, Defendants allege claims for: violations of the Interstate Land Sales Full Disclosure Act ("ILSA"); breach of fiduciary duty/constructive fraud; violations of the South Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"); negligence/gross negligence; breach of contract; tortious interference with contract; and violations of North Carolina's Anti-Deficiency Statute ("Deficiency Statute"). (*See generally* Defs.' Am. Countercls.) In addition, Defendants invoke the doctrines of equitable estoppel; apparent agency; agency by estoppel; and estoppel to deny joint venture.

III.

PRINCIPLES OF LAW

A.

STANDARD OF REVIEW

{10} On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the question before the court is "'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.'" *Block v. County of*

*Person*, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000) (quoting *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)).

{11} "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Id.* at 277–78, 540 S.E.2d at 419.

{12} In considering a motion to dismiss for failure to state a claim upon which relief can be granted, "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 613, 646 S.E.2d 826, 837 (2007) (quoting *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970)).

B.

ANALYSIS

1.

PLAINTIFF'S MOTION TO DISMISS

a.

JOINT VENTURE

{13} Defendants argue that the Plaintiff, Third-Party Defendant, and Developer's conduct in the sale of lots at Seven Falls constituted a joint venture, and accordingly, that Plaintiff and Third-Party Defendant are both liable for certain claims based on the Developer's conduct.

{14} "A joint venture exists when there is: '(1) an agreement, express or implied, to carry out a single business venture *with joint sharing of profits*, and (2) an *equal right of control* of the means employed to carry out the venture.'" *Rifenburg Constr., Inc. v. Brier Creek Assocs., L.P.*, 160 N.C. App. 626, 632, 586 S.E.2d 812, 817 (2003) (quoting *Rhoney v. Fele*, 134 N.C. App. 614, 620, 518 S.E.2d 536, 541 (1999)), *aff'd*, 358 N.C. 218, 593 S.E.2d 585 (2004). Therefore, Defendants must allege sufficient facts for the Court to infer that the essential elements of joint venture exist.

{15} In support the sharing of profits element, Defendants allege: (1) that Plaintiff and Developer "jointly marketed and orchestrated approximately Fifty Million Dollars . . . in residential lot sales . . ." (Am. Countercls. ¶ 8); and (2) that upon information and belief, Plaintiff and the Developer shared profits on numerous transactions related to the sale of lots at Seven Falls (Am. Countercls. ¶ 8.)[1] Taking Defendants' allegations at true, the Court concludes that Defendants have adequately alleged that Plaintiff, Third-Party Defendant, and the Developer shared profits.

{16} As for allegations related to Plaintiff and Third-Party Defendant's alleged right of control over the means to carry out the venture, Defendants only allege that "NBSC failed to properly supervise and oversee the Developer or its employees and agents *despite having some measure to direct the conduct of the Developer*." (Am. Counterclms. ¶ 2(n); *see also* Defs.' Resp. Pl.'s Mot. Dismiss 4.) This allegation is a conclusion of law and is not supported by any of the facts pled in Defendants' Counterclaim and Third-Party Complaint. Accordingly, the Court concludes that Defendants have failed to plead sufficient facts to show that Plaintiff had a right of control over the means to carry out the alleged joint venture, and thus, have failed to adequately allege all the elements of a joint venture. Therefore, Plaintiff's Motion is GRANTED as to this claim.

b.

VIOLATION OF ILSA

{17} Plaintiff argues that Defendants' ILSA claim should be dismissed because: (1) Plaintiff does not meet the definition of either a "developer" or "agent" under ILSA, and (2) Defendants do not allege that the property they purchased was sold in violation of Section 1703 of that Act. (Pl.'s Br. Supp. Mot. Dismiss 10–12.)

{18} "ILSA creates a private right of action against 'developers' and 'agents of developers' in connection with sales or leases made in violation of its provisions."

---

[1] Defendants specifically reference over twenty different transactions in their Counterclaim and Third-Party Complaint. The Court does not specifically reference each transaction in an attempt to limit the length of its opinion.

*Synovus Bank v. Okay Props., LLC*, 2012 U.S. Dist. LEXIS 121744, at * 14 (W.D.N.C. Aug. 27, 2012) (citing 15 U.S.C. § 1709 (2011)).  The Act's provisions are "'designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers.'" *Id.* (quoting *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.*, 426 U.S. 776, 778 (1976)).  "A purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of . . . [15 USC § 1703(a)]."  15 U.S.C. § 1709(a).  A "developer" is defined as "'any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision . . . [,]'"*Synovus Bank*, 2012 U.S. Dist. LEXIS 121744, at * 14 (quoting 15 U.S.C. § 1701(5) (2012)), while an "agent" is "'any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision . . . .'"  *Synovus Bank*, 2012 U.S. Dist. LEXIS 121744, at * 14 (quoting 15 U.S.C. § 1701(6)).

{19}  Conduct by lending institutions acting within the ordinary course of business does not normally come within the purview of ILSA.  *See Freely v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 710 (E.D. Va. 2009); *Hammar v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.,* 757 F. Supp. 698, 702 (W.D. Va. 1990).  However, "where a financial institution acts beyond its ordinary course of dealing as a lending institution and participates in the actual development, marketing[,] or sale of property[,] . . . liability may arise under ILSA."  *Thompson v. Bank of Am.*, 2011 U.S. Dist. LEXIS 33833, at *7 (E.D.N.C. Mar. 29, 2011).

{20}  Defendants allege that Plaintiff and the Developer: (1) promoted Plaintiff as the primary or preferred lender on joint letterhead with no disclaimers or provisions indicating a separation between the Developer and Plaintiff (Am. Countercls. ¶ 11(c)), (2) engaged in the marketing and selling of residential real estate across state lines (Am. Countercls. ¶ 31), and (3) marketed Seven Falls together under a common promotional plan.  (Am. Countercls. ¶ 32.)  The Court concludes that Defendants have adequately alleged that Plaintiff was a developer as defined by ILSA.  However, an ILSA claim can only be maintained when "a purchaser or

lessee['s] . . . sale or lease was made in violation of . . . [ILSA]." 15 U.S.C. § 1709(a). Here, Defendants have not alleged that the property *they* purchased was sold in violation of the Act, but instead, that generally lots at Seven Falls were sold "by means of untrue statements." (Am. Counterclms. ¶ 34.) Accordingly, the Court concludes that Defendants' allegations are insufficient to state a claim under ILSA, and Motion I is GRANTED as to this claim.

c.

SOUTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT ("SCUDTPA")

{21} Plaintiff argues that Defendants (Texas residents) can not assert a claim under SCUDTPA because they were not injured in South Carolina and under the choice of law rule *lex loci delicti* ("*lex loci*") the law of the state where the complainant was injured governs the outcome of the claim. (Pl.'s Br. Supp. Mot. Dismiss 13–14.) Defendants counter that they can raise a claim under SCUDTPA because Plaintiff and its employees were stationed in South Carolina and that claims under SCUDTPA are "not limited to South Carolina residents nor to injuries suffered in that state." (Defs.' Resp. Pl.'s Mot. Dismiss 9.) For the reasons stated below, the Court finds neither Plaintiff's nor Defendants' position persuasive.

{22} There is a split of authority in North Carolina as to the appropriate choice of law rule for deciding which state's law controls the determination of claims brought to remedy allegedly unfair and deceptive trade practices, *Associated Packaging, Inc. v. Jackson Paper Mfg. Co.*, 2012 NCBC 13 ¶ 25 (N.C. Super. Ct. Mar. 1, 2012), http://www.nc businesscourt.net/opinions/2012%20NCBC%2013.pdf (citing *Stetser v. TAP Pharm. Prods. Inc.*, 165 N.C. App. 1, 15, 598 S.E.2d 570, 581 (2004)), with one panel of the North Carolina Court of Appeals adopting the "significant relationship test," *Andrew Jackson Sales v. Bi-Lo Stores*, 68 N.C. App. 222, 225, 314 S.E.2d 797, 799 (1984), while a subsequent panel applied the *lex loci* test. *United Va. Bank v. Air-Lift Assocs.*, 79 N.C. App. 315, 321, 339 S.E.2d 90, 93 (1986). For the reasons provided by this Court in *Associated Packaging Inc.*, and because neither Plaintiff nor Defendants have argued that the substantial relationship test should be used, the Court applies the *lex loci* test to determine

which state's law applies to Defendants' claim.  *Associated Packaging, Inc.*, 2012 NCBC 13 ¶¶ 25–27.

{23} Under the *lex loci* test, "'the law of the state where the [complainant] was injured controls the outcome of the claim.'"  *Harco Nat'l Ins. Co. v. Grant Thornton, LLP*, 206 N.C. App. 687, 694, 698 S.E.2d 719, 724 (2010) (quoting *Stester*, 165 N.C. App. at 14–15, 598 S.E.2d at 580).  "'That is, the situs of the tort ordinarily is the state where the last event necessary to make the actor liable or the last event required to constitute the tort takes place . . . .'"  *Harco Nat'l Ins. Co.*, 206 N.C. App. at 695, 698 S.E.2d at 724 (quoting 16 Am. Jur. 2d *Conflict of Laws* § 109 (2009)).  Put another way, "[t]he . . . injury is considered to be sustained in the state 'where the last act occurred giving rise to [the] injury.'"  *Harco Nat'l Ins. Co.*, 206 N.C. App. at 694, 698 S.E.2d at 724 (quoting *United Va. Bank v. Air-Lift Assocs.*, 79 N.C. App. at 321, 339 S.E.2d at 93).  The laws of South Carolina, Texas, and North Carolina all require complainant to suffer damages as a prerequisite for a cause of action under their respective unfair and deceptive trade practice acts.  S.C. CODE ANN. § 39-5-140(a) (2012) (requiring a loss of money or property as a result of a prohibited act in order for an action to be brought); TEX. BUS. & COM. CODE § 17.50(a) (2012) (requiring economic damages or damages for mental anguish in order for an action to be filed); *Bailey v. Le Beau*, 79 N.C. App. 345, 352, 339 S.E.2d 460, 464, *modified and aff'd*, 318 N.C. 411, 348 S.E.2d 524 (1986) (citing N.C. GEN. STAT. § 75-16 (1986)).  Thus, the suffering of damages by Defendants would be the last event necessary to make Plaintiff liable under the relevant state unfair and deceptive trade practices acts.  Accordingly, the Court must determine where Defendants allegedly suffered their damages.

{24} Plaintiff contends that because Defendants are residents of Texas the economic impact of their damages would be suffered at their place of residence.  However, place of residence is not dispositive.  *Harco Nat'l Ins. Co.*, 206 N.C. App. at 697, 698 S.E.2d at 726 ("The location of a plaintiff's residence or place of business may be useful for determining the place of a plaintiff's injury in those rare cases

where, even after a rigorous analysis, the place of injury is difficult or impossible to discern.").

{25} From the Counterclaim and Third-Party Complaint, it appears to the Court that Defendants have not been deprived of their property through foreclosure, and still own their lot at Seven Falls. In addition, Defendants' claims are brought because the Developer, and subsequently Plaintiff, allegedly failed to develop the planned community as promised, thus leaving Defendants with a lot worth significantly less than the amount Defendants are obligated to pay Plaintiff. While Defendants would undoubtedly feel the economic loss from a failed real estate purchase where they reside, Defendants damages are associated with a loss in value of the purchased property in North Carolina where the property is located. Because the damages suffered by Defendants appear to have occurred in North Carolina, the last event giving rise to liability occurred in this State and the laws of North Carolina should apply to Defendants' unfair and deceptive trade practices claim. Therefore, Motion I is GRANTED in part as to this claim. Defendants' claim under SCUDTPA is DISMISSED, but without prejudice to Defendants to amend their counterclaims and assert a claim for unfair and deceptive trade practices under North Carolina's consumer protection laws.

d.

NORTH CAROLINA'S ANTI-DEFICIENCY JUDGMENT STATUTE ("NCAJS")

{26} Plaintiff argues that Defendants' claim under the NCAJS should be dismissed because the statute only applies to transactions involving a purchase-money mortgage. (Pl.'s Br. Supp. Mot. Dismiss 15.) Defendants contend that because the term "purchase-money mortgage" was used in the promissory note, and because Plaintiff and the Developer were involved in a joint venture, this case does in fact involve a purchase money mortgage. (Defs.' Resp. Pl.'s Mot. Dismiss 10–11.) The Court finds neither of these arguments availing.

{27} The NCAJS "should apply only to purchase-money mortgages and deeds of trust given by the vendee to the vendor, and that its application to third parties be limited to assignees of the seller." *Childers v. Parker's, Inc.*, 274 N.C. 256, 263, 162

S.E.2d 481, 485 (1968).  The Court has dismissed Defendants' claim for joint venture, therefore the Court does not conclude that Plaintiff was the vendor or constructive seller of the property purchased by Defendants.  Instead, Plaintiff was a third-party lender used to finance Defendants' purchase of a lot at Seven Falls. Because Plaintiff was not the vendor of the property, any purchase-money mortgage given by Defendants to Plaintiff would fall outside the protections of the NCAJS. While accepting all of the allegations in Defendants' Counterclaim and Third-Party Complaint as true, the Court concludes that Defendants' claim under the NCAJS fails as a matter of law and Motion I should be GRANTED as to this claim.

e.

BREACH OF FIDUCIARY DUTY/CONSTRUCTIVE FRAUD

{28}  There is a dispute between the parties concerning which state's law applies to Defendants' tort claims.  As was the case with Defendants' unfair and deceptive trade practices claim, the Court uses *lex loci* as the test in determining the appropriate state law to apply to Defendants' tort-based claims.  *Harco Nat'l Ins. Co.*, 206 N.C. App. at 692, 698 S.E.2d at 722 (citing *Boudreau v. Baughman,* 322 N.C. 331, 335, 368 S.E.2d 849, 853–54 (1988)).  As was also the case with Defendants' unfair and deceptive trade practice claim, Defendants' tort claims all require that the Defendants have suffered damages.  Thus, the location where those damages were suffered is the location of the last event giving rise to liability.  For the reasons previously stated, the Court concludes that the alleged damages related to Defendants' tort claims stem from a loss in value of the North Carolina property Defendants purchased, and thus, North Carolina is the location where the last event took place giving rise to liability.  Accordingly, the Court will apply North Carolina law to Defendants' tort claims.

{29}  Plaintiff urges the Court to dismiss Defendants' claim for breach of fiduciary duty/constructive fraud because Defendants have not properly alleged a fiduciary duty or relationship of trust and confidence sufficient to impose liability. (Pl.'s Br. Supp. Mot. Dismiss 16–17.)  The Court agrees.

{30} "A fiduciary duty arises when 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" *Allran v. Branch Banking Trust Corp.*, 2011 NCBC 21 ¶ 23 (N.C. Super. Ct. July 6, 2011), http://www.nc businesscourt.net/opinions/2011_NCBC_21.pdf (quoting *Curl v. Key*, 311 N.C. 259, 264, 316 S.E.2d 272, 275 (1984)). "'In order to maintain a claim for constructive fraud, plaintiffs must show that they and defendants were in a 'relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" *Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 67, 614 S.E.2d 328, 335 (2005) (quoting *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997)).

{31} In North Carolina,

> there are two types of fiduciary relationships: (1) those that arise from legal relations such as attorney and client, broker and client . . . partners, principal and agent, trustee and *cestui que* trust, and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other.

*Ellison v. Alexander*, 207 N.C. App. 401, 408, 700 S.E.2d 102, 108 (2010) (quoting *S.N.R. Mgmt. Corp. v. Danube Partners* 141, LLC, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008)) (alteration in original).

{32} The lender-borrower relationship generally does not "give rise to [a] fiduciary relationship[] as a matter of law." *Wells Fargo Bank, N.A. v. Vandorn*, 2012 NCBC 6 ¶ 17 (N.C. Super. Ct. Jan. 17, 2012), http://www.ncbusinesscourt.net /opinions/2012_NCBC_6.pdf (citing *Branch Banking & Trust v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992)); *see also Branch Banking & Trust*, 107 N.C. App. at 61, 418 S.E.2d at 699 ("[T]he mere existence of a debtor-creditor relationship between [the parties does] not create a fiduciary relationship." (citations omitted)). Even if the Court concluded that a joint venture existed between Plaintiff and the Developer, and that Plaintiff was responsible for the alleged wrongs of the Developer, "no fiduciary relationship at law exists between

the developer and purchaser of property." *Goldstein v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 28887, at \*27 (W.D.N.C. 2010) (citing *Morris v. Hennon & Brown Props., LLC*, 2008 U.S. Dist. LEXIS 55963, at \*12 (M.D.N.C. 2008)).  Therefore, for Defendants' claim to survive, the Court would have to conclude that Defendants properly alleged a fiduciary duty existing in fact, based on a special confidence being placed by Defendants in Plaintiff, and a resulting superiority and influence by Plaintiff over Defendants.

{33}  "An ordinary debtor-creditor relationship, . . . generally does not give rise to such a 'special confidence.'" *Allran*, 2011 NCBC 21 ¶ 24 (quoting *United Va. Bank v. Air-Lift Assocs., Inc.*, 79 N.C. App. 315, 322, 339 S.E.2d 90, 94 (1986)).  In addition, "[t]hese determinations depend on particularized inquiries and 'only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen.'" *Wells Fargo Bank, N.A.*, 2012 NCBC 6 ¶ 17 (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 347–48 (4th Cir. 1998)).

{34}  Defendants' bare allegation that they placed special trust and confidence in Plaintiff does not make it so, in the absence of sufficient facts to demonstrate that the parties' relationship was something more than the traditional creditor-debtor relationship.  And because the Court has concluded that no joint venture existed between Plaintiff and the Developer, any alleged fiduciary relationship between Defendants and the Developer is not attributable to Plaintiff.  Accordingly, Defendants' allegations fail to include sufficient facts to show the existence of a relationship of trust and confidence between Defendants and Plaintiff.  The Court concludes, therefore, that Defendants failed to properly allege the existence of a fiduciary duty or relationship of trust and confidence between Defendants and Plaintiff, and Motion I should be GRANTED as to this claim.

f.

## NEGLIGENCE/GROSS NEGLIGENCE

{35} Plaintiff argues that Defendants' claim for negligence/gross negligence should be dismissed because Plaintiff only had a legal duty to fulfill those obligations expressly required in the loan agreement. (Pl.'s Br. Supp. Mot. Dismiss 18.) Defendants disagree, contending that "a duty of care arose between NBSC and each Defendant: (1) as a result of the investment advice and other services provided; (2) as a result of its relationship with the Developer and its intimate knowledge of Seven Falls; and (3) as a result of the customer covenant issued by Synovus Bank." (Defs.' Resp. Pl.'s Mot. Dismiss 12.) For the following reasons, the Court agrees with Plaintiff that Defendants have failed to properly allege the existence of a legal duty that Plaintiff owed to Defendants.

{36} "In the absence of a fiduciary relationship, '[a] lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party.'" *Wells Fargo Bank, N.A.*, 2012 NCBC 6 ¶ 17 (quoting *Lassiter v. Bank of N. C.,* 146 N.C. App. 264, 268, 551 S.E.2d 920, 922 (2001)). As pled, the relationship between Defendants and Plaintiff constitutes nothing more than the typical debtor-creditor relationship. Accordingly, Plaintiff was only obligated to perform those obligations outlined in the loan agreement. While Defendants have argued that Plaintiff owed them a duty, they do not argue that this duty originated from the obligations in the loan agreement. Therefore, the Court concludes that Defendants have failed to properly allege that Plaintiff owed a legal duty and Motion I is GRANTED as to this claim.

g.

## BREACH OF CONTRACT

{37} Defendants' claim for Breach of Contract against Plaintiff is based on a theory of joint venture and attempts to hold "NBSC . . . vicariously liable for the breaches of contract by Developer." (Am. Countercls. ¶ 67.) Because Defendants have failed to properly allege a joint venture, upon the facts of before the Court

Plaintiff can not be liable for an alleged breach of contract by the Developer. Accordingly, Motion I is GRANTED as to this theory of breach of contract.

{38} Defendants also allege that Plaintiff is liable for a breach of the promissory note because the note included the following language:

> We [Plaintiff] pledge to serve every customer with the highest levels of sincerity, fairness, courtesy, respect and gratitude, and delivered with unparalleled responsiveness, expertise, efficiency and accuracy. We are in the business to create lasting relationships and we will treat our customers like we want to be treated. We will offer the finest personal service and products delivered by caring team members who take 100% responsibility for meeting the needs of each customer.

(Am. Countercls. ¶ 61.)

{39} While Defendants' claim that this text was a commitment Plaintiff made in the promissory note, the Court finds none of the quoted text in the agreement.[2] The Court interprets Defendants' argument that Plaintiff breached the terms of the promissory note by failing to fulfill the commitment referenced above to mean, essentially, that Plaintiff breached a contract by failing to fulfill an obligation not included in the parties' agreement. Moreover, the promissory note contained a merger clause with the following language: "[t]his Loan Agreement is the complete and final expression of our agreement." (Pl.'s Br. Supp. Mot. Dismiss Ex. B pg. 2.) Because Defendants offer no evidence to impose a contractual duty on Plaintiff that was not included in the parties' agreement, *see Palmetto State Sav. Bank v. Barr*,

---

[2] While ordinarily a Court's review of a motion to dismiss brought pursuant to Rule 12(b)(6) is limited to those allegations included in the Complaint, "a trial court's consideration of a contract which is the subject matter of an action does not expand the scope of a Rule 12(b)(6) hearing and does not create justifiable surprise in the nonmoving party." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (citing *Coley v. Bank*, 41 N.C. App. 121, 126, 254 S.E.2d 217, 220 (1979)). This is true even when "documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers . . . are presented by the defendant." *Oberlin Capital, L.P.*, 147 N.C. App. at 60, 554 S.E.2d at 847 (citing *Robertson v. Boyd*, 88 N.C. App. 437, 441, 363 S.E.2d 672, 675 (1988)). Accordingly, consideration of the promissory note referenced in Defendants' Amended Counterclaims does not convert Plaintiff's Motion to Dismiss into a Motion for Summary Judgment.

359 S.E.2d 531, 532 (S.C. Ct. App. 1982),[3] the Court concludes that Defendants have failed to allege a claim for which relief can be granted. Accordingly, Motion I is GRANTED as to this claim.

h.

TORTIOUS INTERFERENCE WITH CONTRACT

{40} Defendants claim against Plaintiff for tortious interference with contract is based on a theory of joint venture. (Am. Countercls. ¶¶ 75–78.) Having previously concluded that Defendants failed to properly allege a joint venture, it logically follows that Plaintiff can not be held responsible for an alleged interference with contractual relations by the Developer. Accordingly, Motion I is GRANTED as to this claim.

i.

EQUITABLE ESTOPPEL

{41} To properly plead equitable estoppel, as it relates to the party that is sought to be estopped, Defendants must plead facts showing:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) [an] intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; [and] (3) knowledge, actual or constructive, of the real facts.

*Fike v. Bd. of Trustees*, 53 N.C. App. 78, 80, 279 S.E.2d 910, 912 (quoting *Meachan v. Montgomery Cnty. Bd. of Educ.*, 47 N.C. App. 271, 277–78, 267 S.E.2d 349, 353 (1980)), *cert. denied*, 304 N.C. 194, 285 S.E.2d 98 (1981).

{42} In addition, Defendants must also plead: "(1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the

---

[3] The law of South Carolina is applied to Defendants' breach of contract claim because the promissory note includes a South Carolina choice-of-law provision. (Pl.'s Br. Supp. Mot. Dismiss Ex. B pg. 2.)

conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially." *Id.*

{43} Here, Defendants allege: (1) that Plaintiff and the Developer made misleading representations and concealed material facts from Defendants, (2) that the misrepresentations were made to entice Defendants to execute the promissory note, (3) that Plaintiff knew the representations were misleading, (4) that Defendants relied on Plaintiff's statements, and (5) that as a result of Plaintiff's representations, Defendants executed a purchase agreement and promissory note to purchase a lot that has significantly depreciated in value. (Am. Countercls. ¶¶ 68–74.) Conspicuously absent from Defendants' pleading is any allegation that: (1) Defendants were unaware of the true facts, *and* (2) Defendants lacked the means to discover the truth. *See Hatcher v. Flockhart Foods, Inc.*, 161 N.C. App. 706, 710, 589S.E.2d 140, 143 (2003) (holding at summary judgment that the evidence showed plaintiff lacked knowledge of the true facts *and* "was unable to discover that knowledge"); *see also Fike*, 53 N.C. App. at 81, 279 S.E.2d 910, 913 (affirming trial court's order in a case concerning agency by estoppel, and holding that plaintiff did not "have the means of knowledge of the true facts . . . ."). Accordingly, the Court concludes that Defendants have failed to allege a necessary element of equitable estoppel, and thus, Motion I is GRANTED as to this claim.

j.

APPARENT AGENCY, AGENCY BY ESTOPPEL, AND ESTOPPEL TO DENY JOINT VENTURE

{44} "Apparent agency, also known as agency by estoppel, is a form of equitable estoppel, . . . and, that being the case, [this Court is] guided by the principles and policies governing equitable estoppel in determining if the doctrine of apparent agency must be applied in this [action]." *Deal v. N.C. State Univ.*, 114 N.C. App. 643, 645, 442 S.E.2d 360, 362 (1994) (citing *Fike*, 53 N.C. App. 78, 279 S.E.2d 910). When estoppel is asserted in an agency context, the rule is as follows:

> '[w]here a person by words or conduct represents or permits it to be represented that another person is his agent, he will be estoped to deny the agency as against third persons who have dealt, on the faith

of such representation, with the person so held out as agent, even if no agency existed in fact.'

*Deal*, 114 N.C. App. at 645, 442 S.E.2d at 362 (quoting *Hayman v. Ramada Inn, Inc.*, 86 N.C. App. 274, 278, 357 S.E.2d 394, 397, *disc. review denied*, 320 N.C. 631, 360 S.E.2d 87 (1987)).  However, while the above-quoted language is adapted to an agency setting, all the "essential elements of equitable estoppel are present . . . ."

{45}  Defendants' claim for apparent agency or agency by estoppel is plagued with the same deficiencies identified by the Court in its analysis of Defendants' claim of equitable estoppel.  While Defendants have alleged that Plaintiff's participation in the joint marketing and promotion of Seven Falls led them to reasonably believe that the Developer was Plaintiff's agent, Defendants have failed to allege that they were unaware of the true facts, and lacked the means to discover the truth.  *See* ¶¶ 43–44 *supra*.  The Court of Appeals holding in *Fike* is clear, while apparent agency is a distinct form of equitable estoppel, the complainant must still prove all elements of equitable estoppel.  The Court recognizes that at this stage in the litigation it is not Defendants' burden to prove the elements of their claims; however, this does not excuse them from their obligation to sufficiently plead the existence of those elements.  Accordingly, the Court concludes that Defendants have failed to properly plead their claim for apparent agency, and thus, Motion I is GRANTED as to this claim.

2.

THIRD-PARTY DEFENDANT'S MOTION TO DISMISS

{46}  Third-Party Defendant moves to dismiss Defendants' claims for failure to state a claim upon which relief can be granted.  (See Synovus Financial Corps. Mot. Dismiss Am. Third Party Claims.)  To the extent that the Court has concluded that Defendants' counterclaims against Plaintiff should be dismissed, the Court likewise concludes that the claims against Third-Party Defendant should also be dismissed. Accordingly, Third-Party Defendant's Motion to Dismiss is GRANTED in part, and DENIED in part.  Defendants may amend their third-party complaint to assert a

claim for unfair and deceptive trade practices under North Carolina's consumer protection laws.

IV.

CONCLUSION

{47} For the above stated reasons, Motion I and Motion II are GRANTED in part, and DENIED in part. Accordingly, Defendants' claims for: joint venture; violation of ILSA; breach of fiduciary duty and constructive fraud; negligence/gross negligence; breach of contract; equitable estoppel; tortious interference with contract; violation of North Carolina's anti-deficiency judgment statute; and apparent agency are DISMISSED as to Plaintiff and Third-Party Defendant. In addition, Defendants' claim under SCUDTPA is DISMISSED as to both Plaintiff and Third-Party Defendant, but without prejudice to Defendants to amend their pleadings and assert a claim for unfair and deceptive trade practices under North Carolina's consumer protection laws.

SO ORDERED, this the 30th day of July 2013.